## City of Lexington v. Chenault.

(Decided January 29, 1913.)

### Appeal from Fayette Circuit Court.

1. Damages—Lowering Grade in Street—What Witness Should State in Such Action.—In an action by a property owner against the city to recover damages to his property from the lowering of the grade of the street, a witness should not be asked how much the property had been damaged by the lowering of the grade, but should be required to state what was the fair market value of the property just before and just after the grade was changed.

2. Damages—Measure of Recovery.—In such a case the measure of recovery is the difference, if any, caused by the grading of the street, between the fair market value of the property, just before it became known that the work would be done, and just after the work was done.

**3.** Damages—Injury to Property from Lowering Grade of Street— Measure of Recovery.—It was incumbent on the plaintiff to exercise ordinary care to prevent injury to the property, and no recovery may be had for a loss which might have been avoided by ordinary care; and if a part of the loss might have been avoided at a reasonable expense in adjusting the property to the changed conditions, the reasonable cost of so doing is the measure of recovery for such loss.

J. EMBRY ALLEN, for appellant.

KIMBALL & HUNTER, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

Mrs. Sarah G. Chenault owns property in Lexington, Kentucky, on which she resides, fronting 178 feet on Limestone Street and running back to Upper Street. The lot was higher than the street and a retaining wall had been built along the front of the lot to hold the earth. The house set back 67 feet from the street and the front yard was set in trees, flowers and shrubbery. The city of Lexington changed the grade of Limestone street, lowering it at the corners of Mrs. Chenault's lot about six or eight inches, and in the center of the lot, according to her proof, twenty-eight inches, and according to the proof of the city, twenty-two inches. The result of cutting down the grade of the street was that the stone wall in front of the property fell down and had to be removed. A lot of the earth which was near the wall caved in and had also to be removed. She then had the ground terraced and sodded. This action was filed by her against the city to recover damages for the injury to her property by reason of the change in the grade of the street. On the trial of the case before a jury, there was a verdict and judgment in her favor for $1,500. The city appeals.

John Hutsell, Barney Treacy and John A. Geary were allowed over the defendant's objection to testify how much they thought the plaintiff's property had been damaged, without being required to state what its fair market value was before and after the injury; and there was on the trial much other testimony of like character although the court indicated to counsel more than once what the proper form of the question should be. In I. C. R. R. Co. v. Smith, 110 Ky., 207, we said:

"A witness asked the mere question, "How much, in your opinion, was A. damaged by the overflowing of

his lands?'' at a certain time left the witness to determine the measure of damage, and to apply it. In thus determining the measure of damages, the witness exercises the functions of the court, and, in applying it, the functions of the jury. Besides, neither the jury nor the court, nor counsel interested could know what measure the witness adopted, and therefore would not know what just value to give his opinion, even had it been competent as testimony. In such a case we think the court should determine the criterion of recovery, and control the evidence of damage by it. If the criterion is the diminished rental value of the land, then the question to the witness is, ''What was the rental value of the land but for the injury complained of?'' and then, ''How much, if any, had it been impaired by reason of the injury complained of?'' If the criterion is the diminished salable value of the land, then the inquiry is, ''What was its salable value but for the injury, and how much, if any, has its salable value been diminished by reason of the injury complained of?'' The admission of the character of testimony above referred to was error.''

See also Southern R. R. Co. v. A. M. E. Church Trustees, 121 S. W., 973; I. C. R. R. Co. v. Haynes, 122 S. W. 211. There was so much of such evidence before the jury on the trial that we think it may have misled the jury and prejudiced the defendant substantially. The measure of damages here is the diminution in the fair market value of the property by reason of the cutting down of the street. The witnesses may state the fair market value of the property as a whole or its value per front foot. They may tell in detail all the changes produced in the property, and testify to any fact or circumstance within their knowledge, affecting the fair market value of the property, but they should not be allowed to testify generally how much the property in their judgment has been depreciated by the cutting down of the street. They should be required to state the fair market value before and immediately after the injury; for only in this way can the jury judge intelligently of the relative value of the testimony of the different witnesses. Purely sentimental matters have no place in an inquiry of this sort. A person may be much attached to an old home, and dislike very much seeing any change made in it, but the only standard of legal compensation is the diminution in the fair market value of the property.

In city of Henderson v. Winstead, 109 Ky., 328, we said:

"The measure of damages is the diminution in the value of the property by reason of the lowering of the grade of the street."

In city of Covington v. Taffee, 24 R., 373, we again said:

"The recovery should have been limited to the difference caused by the grading of the street, "between the fair market value of the property before and after the grading was done." See also city of Louisville v. Kaye, 122 Ky., 599.

In Lewis on Eminent Domain, 3rd Edition, sec. 753, it is said:

"Where property is damaged by a change of grade, the cost of adjusting the property to the new grade may be shown, but the damages are not necessarily measured by such cost. And generally the cost of adjusting the property to the changed conditions, brought about by the taking, or of alleviating or preventing the continuance of the damage, or of changing or reconstructing works so as to use the property as before, may properly be shown and considered in estimating how much the property has been damaged."

In lieu of instructions 1, 2 and 3 the court on another trial will instruct the jury: (1) If they believe from the evidence that the fair market value of the plaintiff's property has been decreased by the lowering of the grade of Limestone street, they should find for the plaintiff. (2) Unless they so believe they will find for the defendant. (3) If the jury find for the plaintiff they will find for her subject to No. 4, such a sum as fairly represents the difference caused by the lowering of the grade of the street, between the fair market value of the property just before it became known that the work would be done, and just after the work was done. (4) It was incumbent on the plaintiff to exercise such care in preventing injury to the property from the cutting down of the street as may be reasonably expected of a person of ordinary prudence under like circumstances, and if she failed to exercise such care, and but for such failure on her part some of the injury to the property would not have occurred, the city is not responsible for such loss. If any of the loss might have been avoided by a reasonable expense in adjusting the property to the

changed conditions, the reasonable cost of so adjusting the property to the changed conditions is the measure of recovery for such loss.

The instructions which the defendant asked were properly refused. But the defendant was entitled to some instruction presenting its defense. It was the duty of the property holder to use ordinary care to protect the property and minimize the loss. On the whole case we conclude that a new trial should be granted.

Judgment reversed and cause remanded for further proceedings consistent herewith.